SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------X
JOSEPH KASIOTIS, individually and on behalf of all
other similarly situated New York consumers,

         Index No.

         Plaintiff,      **SUMMONS**

         **Plaintiff designates**
  -against-      Westchester County
         as the Place of Trial.

NEW YORK BLACK CAR OPERATORS'
INJURY COMPENSATION FUND, INC.,    The basis of venue
         is CPLR §503(a).
         Defendant.
------------------------------------------------------------------X

**To the above named Defendant:**

      **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this Summons, exclusive of the date of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:  White Plains, New York
       August 1, 2018

         Respectfully Submitted,

         _____
         DENLEA & CARTON LLP
         Jeffrey I. Carton, Esq.
         Robert J. Berg, Esq.
         Myles K. Bartley, Esq.
         2 Westchester Park Drive, Suite 410
         White Plains, N.Y. 10604
         Telephone: (914) 331-0100
         Facsimile: (914) 331-0105
         jcarton@denleacarton.com
         rberg@denleacarton.com
         mbartley@denleacarton.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
----------------------------------------------------------------------X
JOSEPH KASIOTIS, individually and on behalf of all
other similarly situated New York consumers,

            Index No._____

            Plaintiff,      **CLASS ACTION**
                                                   **COMPLAINT**

   -against-

NEW YORK BLACK CAR OPERATORS'
INJURY COMPENSATION FUND, INC.,

            Defendant.
----------------------------------------------------------------------X

     Plaintiff Joseph Kasiotis, by and through his counsel, Denlea & Carton LLP, respectfully files this Class Action Complaint in his individual capacity and on behalf of a class of similarly-situated New York consumers who have had a 2.5% surcharge imposed on the voluntary, non-cash gratuities they paid in connection with the use of black car services, and alleges as follows:

## NATURE OF THE ACTION

     1.    This action seeks to redress the widespread, uniform and unlawful business practice by which New York consumers who use "black car" (or livery car) services are being unfairly assessed a 2.5% surcharge when they provide non-cash tips to their driver. By this action, Plaintiff seeks (i) to enjoin the improper and overreaching imposition of a surcharge on consumers' non-cash tips, and (ii) to provide restitution to a class of New York consumers from whom Defendant has been unjustly enriched.

     2.    Webster's Dictionary has long defined a "gratuity" as "something given voluntarily or beyond obligation usually for some service." Despite the obvious and unremarkable proposition that a gratuity is "voluntary" and offered "without obligation,"

New York consumers are being unlawfully "taxed," when black car companies impose (and collect) a mandatory surcharge, intended to be calculated on the fare only, also on the consumers' tips.

3. As a result of that improper "tax," Defendant is being unjustly enriched at the expense of consumers and their good will.

4. This action seeks to enjoin Defendant's wrongful collection of a surcharge on non-cash gratuities and to provide New York consumers with restitution of the amounts by which Defendant has been unjustly enriched.

## THE PARTIES

5. Plaintiff Joseph Kasiotis is a natural person of full age of majority who is domiciled and resides in Bronxville, New York. Mr. Kasiotis is a frequent user of black car operators' services, including Uber, and has used such services multiple times. Mr. Kasiotis has provided his drivers with non-cash gratuities (charged to his credit card) and has had the 2.5% surcharge assessed on these gratuities.

6. Defendant New York Black Car Operators' Injury Compensation Fund, Inc. ("NYBCOICF" or "The Fund") is a not-for-profit corporation with its principal place of business at 30 Wall Street, 10th Floor, New York, New York 10005. NYBCOICF is a statutorily created entity that provides workers' compensation benefits to black car and livery car operators in New York State.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action because the parties are both New York residents and the acts and events at issue in this case took place in New York.

8. Venue is proper in this Court because Plaintiff is a resident in this County,

2

and a substantial part of the underlying events took place in this County.

## FACTS

9. NYBCOICF was created by a New York statute to provide Workers' Compensation coverage and other benefits to black car operators in the state of New York. The Fund is commonly referred to as "The Black Car Fund."

10. Since in or about January 2000, following the enactment of its enabling legislation, all livery or black car operators (or "bases") are required to be members of The Black Car Fund, if they meet certain criteria set forth in the statute, i.e. the companies cannot own more than 50% their vehicles and must do a minimum of 90% of their business on a non-cash basis.

11. Black car and livery companies operating outside of New York State are also required to become members of The Black Car Fund if those companies do work in the state of New York and they meet the criteria identified in the statute.

12. The Fund derives its income from a 2.5% surcharge applied to the fare, which is billed and collected by member bases from their clients and then remitted monthly to The Fund.

13. Today, Defendant has approximately 300 member bases and collectively there are more than 70,000 affiliated drivers covered by workers' compensation.

### The Mechanics Of Payments Into The Black Car Fund

14. As required by New York law, black car operators charge a 2.5% surcharge of each fare for mandatory workers compensation benefits. N.Y. EXEC LAW § 160-cc, *et seq.*

15. The law, however, does not impose a surcharge on <u>all</u> payments to black car operators, but only payments for "covered services."

3

16. New York law specifically defines "covered services" to mean (1) from an in-state central dispatch, dispatches for pick-up or discharge, and (2) for an out-of-state central dispatch, all dispatches involving a pick-up in New York State.

17. Thus, under New York law, while the pick-up and discharge of passengers are considered "covered services"; a "tip" or voluntary gratuity is not similarly defined as such a "covered service." Nor could it be, as the very essence of a gratuity is its voluntary nature, unmoored from any legal obligation to make such a payment. Indeed, by definition, a gratuity is an expression of appreciation to the driver personally, not payment for the fare.

18. After black car operators receive the surcharged funds, those funds are then paid monthly into The Black Car Fund to cover workers compensation benefits.

19. Thus, any surcharge inappropriately assessed on a tip is also paid to Defendant, and results in Defendant being unjustly enriched at Plaintiff's and Class members' expense.

### Defendant, Not Black Car Operators, Is
### Unjustly Enriched By Receiving The Improper Surcharge

20. The introduction of ride hailing applications from firms like Uber Technologies, Inc., Lyft, and Via has reshaped the black car business in New York, by exponentially increasing the number of daily transactions and, in turn, creating a perverse incentive for Defendant to ensure that the unlawful imposition of surcharges on non-cash gratuities continues.

21. By way of example, ride hailing giant Uber did not initially permit its drivers to charge or accept tips. (*See, e.g.*, Andrew J. Hawkins, "Uber finally caves and adds a

tipping option to its app," The Verge, available at: https://bit.ly/2sn8XJ8 last visited June 7, 2018.)

22. Uber's recent change in its tipping policy, along with similar decisions by other large ride hailing companies, to permit its drivers to receive tips, however, has created an enormous windfall for Defendant, which Defendant has no incentive to stop.

23. Although black car companies could limit the collection of the surcharge so as to exclude the non-cash tip from the amount to which the surcharge is applied, they have elected not to do so.

24. For instance, Uber's website details how consumers can use Uber's app to tip Uber's drivers and delivery personnel.

25. Uber explains that "Tipping is up to you: It's completely optional, but always appreciated" and assures consumers that there are "Zero service fees: Tips go directly to drivers; Uber does not charge additional service fees on tips." (available at: https://www.uber.com/en-CA/ride/how-it-works/tips/, last visited July 20, 2018.)

26. Uber also explains, "Uber takes zero fees on tips." (*Id.*)

27. To provide a tip, Uber walks consumers through the use of Uber's mobile application as detailed below:

5

Rides

 

Make sure you have the latest version of the app to provide your driver a tip. You can add a tip after rating your ride. Tips can also be added from your trip history and trip receipt. You have up to 30 days after your trip is completed to give a tip.

Select a preset amount for your tip.

 

Or enter a custom tip if you'd like to provide a different amount.

Tap Done to send the tip.

28. But when Uber collects tips from New York consumers, it impermissibly

tacks on the Black Car Fund surcharge to such gratuities.

29. Uber then remits the improperly assessed surcharge to Defendant, enriching Defendant at the consumer's expense.

30. Upon information and belief, other black car operators make the same promises regarding tipping.

31. For example, Lyft explains how to tip its drivers:

Lyft Help    Riding with Lyft    After Rides

## How to tip your driver

100% of tips go to drivers. After a ride, you can choose to tip your driver with cash or through the Lyft app. Tips added in the app are charged to the card on file. Lyft credit can't be used to tip drivers.

**Skip to:**

- Add a tip when you pay
- Add a tip later

(available at: https://help.lyft.com/hc/en-us/articles/115013081368-How-to-tip-your-driver, last visited July 20, 2018.)

32. But Lyft, like Uber, also imposes a 2.5% surcharge on non-cash gratuities and remits those monies collected to the Black Car Fund.

Tip Increase Receipt

Ride with Manpreet ending February 28 at 8:18 PM

| | |
|---|---|
| Increase Tip | $2.00 |
| Black Car Fund Surcharge | $0.05 |
| Charges to American Express *2004: | $2.05 |

© Lyft 2018
185 Berry Street, Suite 5000
San Francisco, CA 94107

Questions? Visit our Help Center   Work at Lyft

33. By this action, Plaintiff seeks to enjoin permanently the imposition and collection of a 2.5% surcharge on such non-cash gratuities and to provide restitution to New York consumers from whom Defendant has been unjustly enriched.

**CLASS DEFINITION AND ALLEGATIONS**

34. Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the State of New York pursuant to CPLR § 901, and seeks certification of the following class:

> All consumers who, within the applicable statute of limitations period, used a black car service's ride, ridesharing or delivery service, provided a non-cash tip to the driver, and had a surcharge imposed upon that gratuity which was then remitted to the Black Car Fund. Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

35. **Numerosity**. This action is appropriately suited for a class action. The

8

members of the class are so numerous that joinder of all members of the class is impracticable. According to the New York City Taxi and Limousine Commission, Uber alone dispatched more than 125 million rides just in New York City from the beginning of 2015 to mid-March 2017. As a result, Plaintiff is informed, believes, and thereon alleges, that the proposed class contains hundreds of thousands of New York consumers from whom Defendant has been unjustly enriched. The precise number of class members is unknown to Plaintiff.

36. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the class. The common legal and factual questions include, but are not limited to, the following:

- Whether the alleged conduct constitutes violations of the law asserted;
- Whether a benefit was conferred upon the Defendant by Plaintiff and Class members;
- Whether Plaintiff and Class members conferred the benefit to Defendant at Plaintiff's and Class members' expense; and
- Whether, as a result of Defendant's misconduct, the Class is entitled to restitution, as well as equitable and injunctive relief.

37. **Typicality**. Plaintiff's claims are typical of the claims of the members of the class, because, *inter alia*, all class members have been injured through the uniform misconduct described above, and were subject to Defendant's improper retention of the benefit conferred upon Defendant by Plaintiff and the Class members.

38. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff utilized black car operators' services; and had a surcharge imposed upon Plaintiff's non-cash tips. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to

prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

39. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Furthermore, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

40. Plaintiff seeks restitution and equitable relief on behalf of the entire Class. Unless a Class is certified, Defendant will continue to be unjustly enriched through the continued improper imposition of the surcharge on Class members' non-cash tips. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and continue to be unjustly enriched at consumers' expense.

41. Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### (Unjust Enrichment)

42. Plaintiff realleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

43. By receiving the Black Car Fund surcharge on non-cash tips from consumers, Defendant has benefited, at Plaintiff's and Class Members' expense, by wrongfully, illegally, and/or mistakenly receiving funds to which Defendant is not entitled and which in equity and good conscience require restitution to Plaintiff and Class members.

44. By reason of the foregoing, Defendant is liable to Plaintiff and the Class members for restitution in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Permanent Injunction)

45. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

46. By continuing to receive the surcharge on non-cash tips, Defendant is presently violating and will continue to violate the statute creating the Black Car Fund, N.Y. EXEC LAW § 160-cc, *et seq.*

47. There is no adequate remedy at law to prevent Defendant from continuing to violate the law and serious and irreparable injury will result if the injunction is not granted, as Defendant will continue to receive millions of dollars in inequitable fees taken from New York consumers.

48. The balance of equities is also in Plaintiff's favor. Defendant has no need, nor legitimate reason, to continue to impose the surcharge on non-cash tips to black car drivers. And if Defendant does need additional funds to fund adequately The Black Car

11

Fund, Defendant is authorized by statute to impose up to a 3% surcharge on fares (but not tips) to make up any shortfall. Indeed, the authorizing legislation does not permit the surcharge on tips.

49. Given the continuing and future harm to Plaintiff and the Class members from Defendant's continued violation of the statute, and the balance of equities in Plaintiff's favor and lack of harm to Defendant from the imposition of an injunction, the Court should grant Plaintiff's request and enjoin Defendant from receiving any fees from surcharges on consumers' tips to drivers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action as soon as practicable, with the class as defined above, designating Plaintiff as the named class representative, and designating the undersigned as Class Counsel.

B. On Plaintiff's First Cause of Action, awarding restitution to Plaintiff and the other members of the Class concerning the funds improperly provided to Defendant, the amount of such funds to be determined at trial.

C. On Plaintiff's Second Cause of Action, permanently enjoining Defendant from receiving funds from the imposition of a surcharge on tips to black car operators.

D. Awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E. Awarding Plaintiff and the Class such other and further relief as this Court

12

deems just and proper.

Dated:   White Plains, New York
August 1, 2018

Respectfully Submitted,

DENLEA & CARTON LLP
Jeffrey I. Carton, Esq.
Robert J. Berg, Esq.
Myles K. Bartley, Esq.
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Telephone: (914) 331-0100
Facsimile: (914) 331-0105
jcarton@denleacarton.com
rberg@denleacarton.com
mbartley@denleacarton.com
*Attorneys for Plaintiff*