Bradley J. Nash
Partner

212 612-0684
bnash@schlamstone.com

SCHLAM STONE & DOLAN LLP

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

June 4, 2019

BY ECF AND EMAIL
Hon. Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:   *Kasiotis v. New York Black Car Operators' Injury Compensation Fund, Inc.*,
      Case No. 18-cv-8057-CS

Dear Judge Seibel:

This firm represents Defendant New York Black Car Operators' Injury Compensation Fund, Inc. (the "Fund") in the above-referenced action. Pursuant to Your Honor's Individual Practices and the Civil Case Discovery Plan and Scheduling Order in this action, in advance of the June 18 conference, I write to inform Your Honor that the Fund anticipates filing a motion for summary judgment on both of Plaintiff's causes of action. The basis for the Fund's motion for summary judgment is set forth below.

### I.   The New York Executive Law Expressly Authorizes Inclusion of Non-Cash Tips in Calculating the Surcharge

N.Y. Exec. Law §160-jj(2) provides that:

> [T]he fund shall establish a proposed **uniform percentage surcharge to be added to (a) the invoices or billings for covered services sent to the customers of the fund's members** by a member or its agent and (b) the credit payments for covered services received by a member or its agent.

Non-cash tips are a line item on the "invoices or billings for covered services sent to the customers of the Fund's members." Indeed, Plaintiff has produced invoices for covered services sent to him for Uber rides, which include a line item for tips. Thus, the statute requires that the Fund establish a "uniform percentage surcharge" to be applied to the invoice, including tips.

Plaintiff's argument that the term "covered services" does not include non-cash tips, but rather only includes the base fare of the trip, is without merit and based on a misinterpretation of the statute. That "covered services" is defined to mean all dispatches for pick-up or discharge from an in-state dispatch, or all dispatches involving an in-state pickup from an out-of-state dispatch," (as Plaintiff alleges in Paragraph 16 of its complaint) does not mean that tips are excluded from the surcharge. The statute **does not provide** that the surcharge applies to "covered services," but rather to "**the invoices or billings for covered services**." Thus, when there is a covered service (a dispatch resulting in a trip), the surcharge is applied to the invoice for that trip. As the invoices that Plaintiff has produced show, the invoice for a covered service includes not only the base fare, but other components, including, for example, surge pricing, wait time, and tolls. Each of these, as well as non-cash tips, is an element of the "invoices . . . for

covered services" to which the uniform surcharge applies.[1]

## II. The Court Must Defer to The Fund's Reasonable Interpretation of The Statute

Even if the Court were to determine that the Executive Law is ambiguous, the Court must defer to the Fund's reasonable interpretation of the statute. The Executive Law delegates to the Fund the authority to "establish" in its plan of operation "a procedure for determining and collecting the appropriate amount of surcharges and assessments." N.Y. Exec. Law § 160-gg(2)(e). Under established law, where the legislature has delegated authority to implement a statutory scheme to an agency, the Courts defer to the agency's reasonable interpretation of the statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984); *Paramount Commc'ns, Inc. v. Gibraltar Cas. Co.*, 90 N.Y.2d 507, 514 (1997) ("[O]nce it has been determined that an agency's conclusion has a sound basis in reason the judicial function is at an end and a reviewing court may not substitute its judgment for that of the agency.") (internal citation and quotations omitted). Here, although the Fund is a not-for profit corporation, rather than an administrative agency, given the legislature's delegation of authority to the Fund, its reasonable interpretation of the statute is similarly entitled to deference.

Since 1999, the Fund's Plan of Operation has provided:

> The surcharge amount shall be calculated on gross invoices, billings and credit for covered services. . . . For the purposes hereof, gross invoices, billings and credit for covered services shall include, but not be limited to, fares charged, tools, parking, waiting time, tips, telephone use, service charges and all other miscellaneous charges.

This is a reasonable interpretation of the statutory phrase "**invoices . . . for covered services**". First, it is based on a plain reading of the statute, as set forth above. Second, this interpretation provides for ease of administration, as it allows the Fund's members to calculate the surcharge on the total (pre-tax) amount of the invoice, rather than having to manually include or exclude certain items before calculating the surcharge. Third, it prevents the incentive of "cheating" by the Fund's members by re-classifying a portion of a fare as a tip in order to avoid having its customers pay the surcharge on that portion. If tips were excluded, member bases could agree with customers to charge lower base rates in return for an agreed-upon "tip" amount. However, this would harm the Fund and the drivers who receive benefits from the Fund, because the amount that the Fund might owe to a driver involved in an accident is based on the driver's "average weekly wage," which includes tips, not just the amount of "base fares" they earned. Accordingly, the Fund's interpretation is reasonable, and is entitled to deference.

## III. The Fund Has Not Been Unjustly Enriched

Finally, even if the Court were to find that non-cash tips should not be included in the definition of "invoices . . . for covered services," the Court should still grant summary judgment in the Fund's favor, because the Fund has not been unjustly enriched. "A cognizable unjust

---

[1] The only elements of the invoice that are not subject to the surcharge are sales and congestion taxes, which are excluded pursuant to an agreement with the New York Department of Finance, which in turn does not impose any State tax on the Fund's surcharge.

enrichment claim requires a showing 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) **that 'equity and good conscience' require restitution**." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 680 (S.D.N.Y. 2012) (Seibel, J.)) (internal quotations omitted) (emphasis added); *see also* 101 *McMurray, LLC v. Porter*, 2012 WL 997001, at *13 (S.D.N.Y. Mar. 26, 2012) (Seibel, J.) ("Enrichment alone will not suffice to invoke the remedial powers of a court of equity. Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust."). Here, there is no injustice because the Fund has not received any windfall, and passengers know about the surcharge before they voluntarily decide to leave a tip. Thus, "equity and good conscience" do not require restitution.

First, the potential amount that the Fund might have to pay to a driver involved in a work-related incident (its potential exposure) is not based on the base fare the driver earns alone, but on their total take-home pay, including tips. Tips thus increase the total amount of exposure to the Fund. Including tips in the calculation of the surcharge does not result in any "unjust enrichment," because the amount of surcharge collected on tips simply covers the Fund for the increased exposure resulting from those tips; it does not in any way provide the Fund with a "windfall." Indeed, if the Court determines that the Fund cannot include non-cash tips in its calculation of the 2.5% surcharge, it is quite possible the Fund will need to increase the surcharge (as the Executive Law allows the Fund to do) to a higher percentage to make up for this lost amount. This would result in all passengers, including the putative class of plaintiffs, paying more toward the surcharge.

Similarly, analyses the Fund has performed in the ordinary course of business consistently show that drivers for "app-based" Transportation Network Companies, or "TNCs" (such as Uber), who third-party discovery has revealed generate the vast majority of non-cash tips (and thus the vast majority of the surcharge on non-cash tips), give rise to greater exposure to the Fund per dollar of surcharge collected. And because the Executive Law requires that a "uniform" surcharge be applied to all member bases, thus preventing the Fund from increasing the surcharge percentage solely for TNC drivers, the surcharge collected on tips received by those drivers helps to cover the increased exposure; it does not unjustly enrich the Fund. The alternative would be to increase the surcharge percentage across the board, which would hardly serve the interests of consumers.

Moreover, it is undisputed that Fund members, including Uber, warn passengers in advance that a surcharge will be applied to non-cash tips. At the very least, once a customer has been charged the surcharge on a tip once, that customer knows that the surcharge will apply to subsequent tips. Thus, any customers who decide to give such a non-cash tip have knowingly agreed to pay a small surcharge on the tip amount. A voluntary decision to pay a tip to a driver, with full knowledge that the surcharge will be charged on such a tip, is not unjust. Plaintiff's argument that it would harm drivers if customers chose not to give a tip in order to avoid the surcharge is meritless. Passengers have the option of leaving a cash tip that would not be subject to the surcharge. Moreover, the entire purpose of the Fund, and thus the surcharge, is to protect drivers, who otherwise would not be entitled to workers' compensation benefits.

*   *   *

We thank the Court for its attention to this matter and look forward to discussing it further at the conference on June 18, or at the Court's earliest convenience.

Respectfully,

Bradley J. Nash

cc: Jeffrey I. Carton, Esq. (by ECF)